Richardson, J.,
delivered the opinion of the court: '
These two cases, depending substantially upon the same state of facts, were consolidated and tried together by order of court, under the provisions of section 2 of the District Claims Act June 16,1880, chapter 243 (Supplement to Rev. Stat., 562).
The findings show that the claimant Stewart did work and furnished materials for the defendant to the value of $16,550.99, and that he has been paid in certificates and property to the extent of $15,266.08, leaving a balance still due of $1,284.91, unless it is to be reduced or swept away by the allowance of one or both of two items of charge, or claims, set up against it by the defendant. The validity of these claims depends upon a determination of principles of law arising upon the following state of facts, as presented by the findings.
1. When the chief engineer measured the work done by Stewart on Dunbarton street, he charged to the contractor and deducted from the amount of his certificate for that work $580.44, therein stated to be “retained for repairs.”
On the part of the defendant it is claimed that the contractor is concluded by the certificate of the chief engineer, under the terms of the eighth and twelfth articles of the contract (set out at the end of finding I), or at least that the burden is upon him to show that the facts do not warrant the longer retention of the money due him.
We cannot concur in that view of the rights and obligations of the parties.
The twelfth article of the contract requires that the measurements be made by the engineer of the board of public works. The eighth article provides that payments shall be made only upon the estimates and certificates of the chief engineer of the board. Measurements, estimates, and certificates were so made *104 in this case. The insertion in one of the certificates of an item for the retention of a sum for repairs, under the circumstances, was not an estimate or certificate of required work left undone. It had no relation to the measurements nor to the quantity of work actually and properly completed. It is evident from the words of the item,'taken in connection with the terms of the contract, that the chief engineer put down the sum “ retained for repairs” not for existing defects in the work, but as security for the performance of the terms of the ninth article of the contract, which is as follows:
“Ninth. It is further agreed that if at any time during the period of one year from the completion of the work to be done under this contract any part ’or parts thereof shall become defective from imperfect or improper material or construction and in the opinion of the said party of the first part require repair, the said party of the second' part will, on being notified thereof, immediately commence and complete the same to the satisfaction of the party of the first part, and in case of a failure or neglect of the said party of the second part so to do, the same shall be done under the directions and orders of the party of the first part at the cost and expense of the party of the second part. (Finding I.)”
The defendant was not expressly authorized by the contract to retain any money specifically to secure the performance of the contractor’s obligations under that article, arid if it did so with his consent or because it claimed not to be forced to make final payment until all the obligations of the contractor were fulfilled, or because such was the usual practice, the District could not hold the money after the claimants’ obligations had been complied with or had ceased to exist. If, during one year next after the completion of the work, the defendant’s officers were of opinion that the work had become defective or imperfect and required repairs, it was their duty to notify the contractor of the fact that he might complete the same to their satisfaction; and if he failed to do so, then, and not till then, they could go on and do the repairs themselves at the cost and expense of the contractor. So far as the money retained was required to meet such costs and expense they might continue to hold it, but no further. That is the plain interpretation of the contract in its relations to this money retained for repairs.
It will be seen from the findings that it is. not shown that the defendant’s officers ever notified the contractor that his work was defective and needed repairs, or that the District had ex *105 pended any sum on account of defects, or that the work was in fact in a defective condition during the year after its completion or since that time. If the defendant had been put to cost, and expense for any breach of the ninth article of the contract on the part of the contractor, the burden was upon the District to show the fact expressly.
By the terms of the article the District officers were bound to notify the contractor if they were of opinion that his work required repairs, and it is hot for him to prove the negative... It is sufficient for his case that they do not prove that he has. broken any of the obligations assumed by him in the ninth article.
It follows that the defendants had no further lien or claim to-the $580.44 that was retained for repairs, and it cannot be-charged against.
2. The second item now under consideration in the defendant’s account of charges against the contractor is. for the sum of $2,610.72 paid through the accounting and disbursing officers, of the Treasury Department, under the provisions contained in the Appropriation Act June 20, 1878, chapter 359 (20 Stat. L., 209), to persons who claimed to be unpaid workmen employed by Stewart, in doing the work under his contracts with the board of public works. It is there enacted—
“ That a sum not exceeding seventy-five thousand dollars be appropriated to pay the workingmen employed in the public-, improvements under the late board of public works of the District of Columbia, or the contractors of the same, whose claims for work and labor are due and unpaid from contractors whose accounts against the government of the District of Columbia had been paid prior to the passage of the act of June twenty-third, eighteen hundred and seventy-four, entitled ‘An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirtieth, eighteen hundred and seventy-five, and for other purposes.’
“ Provided, That such claims shall be severally audited and paid by the proper accounting and disbursing officers of the Treasury, and that the amount found to be due to each workman shall only be paid to him in person if living, or in case of' non-residents of the District of Columbia, by draft on the Treasury of the United States to his or their order, or to his. legal representatives, if dead.
“ And provided further, That if said sum of seventy-five thousand dollars shall not be sufficient to pay all such claims filed prior to first day of December next in full, then there shall be- *106 made the required pro rata deduction on each claim, and the amount to be paid on each claim shall be paid and received in full discharge of the claim of such workman.
“ Provided further, That no such claims shall be received or audited by the accounting officers of the Treasury subsequent to the first day of December, eighteen hundred and seventy-eight, and that one-half the whole amount paid under this paragraph shall be paid by the United States and one-half shall be paid out of the revenues of the District of Columbia other than that portion which is derived from the United States.”
Whether the money thus appropriated was intended by Congress as a donation to unfortunate workmen who had not been able to obtain payment for their services from those who employed them, or as some relief to contractors who had engaged in unprofitable contracts, of which the District received the benefit beyond the contract prices, or both, we have no accurate means of determining. But it may be inferred from the terms of the act that Congress did not intend that the money paid out under its provisions should be charged against the contractors and constitute debts and claims against them in favor of either the District or the United States. The act provided that the money thus appropriated should come one-half from the public Treasury and one-half from the District revenues proper. It did not require the recipients to assign their claims to the District or to the United States, but, on the contrary, if the appropriation should not prove sufficient to pay all the claims, and they should be severally paid only in part, then such part should be received in full discharge of the claims. There was no obligation resting upon the District or the United States to make such payment, and the doing so was a purely voluntary payment or contribution on the part of Congress, which of itself -does not create an obligation on the contractors to reimburse the United States or the District for the amount paid out under such circumstances.
It is a familiar principle that money voluntarily paid for another, without his request or consent, express or implied, cannot be recovered of him, since one person cannot make another his debtor without his assent. (4 Waite’s Actions and Defences, 449.) To avoid the effect of that principle the defendant relies upon the terms of the seventh article of the several contracts, which is as follows :
“ Seventh. It is further agreed that the said party of the sec *107 ond part shall punctually pay the workmen who shall be employed by him on work under this contract in cash current, and not in what is denominated store-pay or orders, and that he will from time to time, and as often as may be required by said party of the first part, furnish to said party satisfactory evidence that all persons who have done work or furnished materials have been paid as herein required. And if such evidence is not furnished such sum or sums as may be necessary for such payment or claims shall be retained by said party of the first part until the said claims shall be fully satisfied.”
The District cannot avail itself of the provisions of this article unless it shows that it has complied with the terms thereof applicable to itself.
The contractor was to furnish satisfactory evidence that all persons who had done work or furnished materials for him had been paid, “ when, from time to time, and as bften as may be, required by said party of the first part” [the District authorities], and not before. That was all the contractor was bound to do. The District was not authorized to pay the workmen and charge the amounts to the contractor. It could only withhold payment until such evidence was furnished after it had been required.
Not only was no such requirement made, but it does not appear that the District authorities knew or desired to know whether or not the contractor in fact owed any workmen. It is not proof of indebtedness by the contractor that a number of persons filed claims against him with the District authorities, nor is it any more proof of indebtedness that the accounting and disbursing officers of the Treasury paid money under the act of Congress to persons who claimed to be such unpaid workmen, but whose claims were not acknowledged by him.
We are therefore constrained to hold that the amounts paid under the act of Congress of June 20, 1878, to persons who claimed to be unpaid workmen of the contractor Stewart, are not chargeable against him in this action in reduction of his account against the District as set out in the findings.
With these items in the defendant’s account disallowed, it appears that the District is indebted for work done by Stewart in the sum of $1,284.91. In July, 1875, Stewart gave an order to the claimant, Childs, upon the District authorities for the payment to-said Childs for $1,435 out of what was due him for work done on Dunbarton and Greene streets. That order was *108 filed with, the District, and is still unpaid. The work on Dun-barton and Greene streets was sufficient to entitle the said Childs to the whole amount which has been found to be due as the balance on a final statement of accounts between Stewart and the District, as set out in the findings, and judgment in favor of Childs will be entered for said balance, $1,284.91, due and payable as of October 31, 1874.